LESAMIS et al. v. GREENBERG.

(Circuit Court of Appeals, Ninth Circuit. May 6, 1918.)

No. 3034.

APPEAL AND ERROR ☞1097(1)—REVIEW—LAW CASE.
     A decree amended in conformity with a decision of the Circuit Court of Appeals, rendered on appeal from an earlier decree, will not be disturbed upon second appeal; the earlier decision having announced the law of the case.

Appeal from the District Court of the United States for the Second Division of the District of Alaska; Cornelius D. Murane, Judge.

Suit by H. Greenberg against Jack Lesamis and others. From a decree for complainant, defendants appeal. Affirmed.

O. D. Cochran and G. J. Lomen, both of Nome, Alaska, and Thomas R. White, of San Francisco, Cal., for appellants.

William A. Gilmore, of Seattle, Wash., and J. F. Hobbes, of Nome, Alaska, for appellee.

Before GILBERT, ROSS, and HUNT, Circuit Judges.

ROSS, Circuit Judge. This is the third time this case has been brought here—on the second occasion on appeal from the decree of the court below entered upon findings after a trial of the suit upon the merits. On that appeal the decree and findings were by this court directed to be modified in certain specified particulars, and affirmed in all other respects. 225 Fed. 449, 140 C. C. A. 481. The suit was brought in the court below by the appellee on that appeal, as well as on this, to obtain the dissolution of a mining partnership between Greenberg, Tyapay, Garbin, and Lesamis, and for an accounting—it appearing in the record on that appeal, as well as on this, that the three last-named persons deeded to Greenberg an undivided one-fourth of certain mining properties then held by them, in consideration of $6,000 at the time paid by Greenberg, and of $24,000 to be paid to them by Greenberg "of the first money taken out of the ground." The parties at once, to wit, in March, 1910, commenced mining the properties

as a partnership, and called it the "Klery Creek Mining Company," and continued such operations until the fall of 1911, when the trouble between them began, resulting in the suit. The trial court, upon a full hearing on the merits, found as facts, among other things, that the partnership was formed under the name of Klery Creek Mining Company, and operated the mines from March 19, 1910, to September 1, 1911, when the parties to it disagreed and ceased their operations; that the defendants Stanley and Salo took whatever interest they acquired in the partnership property and assets under Garbin and Lesamis, with full knowledge of the business condition of the partnership, and held the same in trust for Garbin and Lesamis, respectively; that the total gold production of the company for 1910 was $16,251.42, and for 1911 $9,786.88; that the company, during the time of its operations, became indebted to the firm of Robinson-Magids & Co., and its assignee, Philip Murphy, in the sum of $19,314.94, and that the partners became indebted to the company during the time the mining operations were conducted in the following sums, respectively: Lesamis, $4,429.21; Tyapay, $4,703.21; Garbin, $4,215.40; Greenberg, $5,967.10—that court holding that the $24,000 deferred payment was payable from the net proceeds of the mining operations, and not from Greenberg's one-fourth interest therein, in accordance with which findings of fact and conclusions of the court its decree heretofore brought here on appeal was entered. In holding those findings and conclusions in part erroneous, and in directing their modification, this court held and decided (225 Fed. 451, 140 C. C. A. 483) as follows:

"The appellants insist, in the first place, that the court erred in its interpretation of the contract of sale, or the conveyance of the undivided one-fourth interest in the mining claims to the appellee, relative to the manner of payment of the $24,000 deferred payment as part consideration for the conveyance. The stipulation is that such balance is 'to be paid of the first money taken out of the ground.' The District Court was induced, by reason of the acts of the parties and their seeming construction of the paper, to hold that such balance of the purchase price was to be paid from the net proceeds of the mining claims, which means that all the net product of the mines was to be applied in discharge of such balance. It must be conceded that the stipulation does not so read. It is plain that the payment does not become due until the money is taken out of the ground, and, by reason of the contingency, might never mature. But the controlling idea respecting the construction of the paper is that Greenberg was purchasing a one-fourth interest only, and was to pay $30,000 for that interest, $6,000 of which he paid in cash. The balance he was to pay when the money was taken out of the ground; not he and his partners, nor the firm. He could pay that, therefore, only out of his interest in the money taken out of the ground. Otherwise, his partners would be contributing three-fourths of the money to pay his obligation to them. This could not have been intended, and the contract is susceptible of no such construction. Of course, the manner of the parties' treatment of the contract and its stipulations is often an aid to construction of the instrument, where the terms are ambiguous and their meaning involved. But, where the contract can be rendered by taking it by the four corners and viewing it as a whole, that manner of interpretation is most satisfactory and should be adopted. So construing the contract, the plain meaning of the words 'of the first money taken out of the ground' is the first money taken out of the ground to which the grantee was entitled, which would be one-fourth of the amount so taken; and the intendment is that the first money shall be the gross amount to which the grantee is entitled, and not the net. We think, therefore, the trial court was in error in its interpretation of the contract. Taking the court's

250 F.—54

finding as to the gross products of the mines, which is: For the year 1910, $16,251.42; 1911, $9,786.88—aggregating $26,038.30—the appellee would be entitled to have one-fourth thereof, or $6,509.57, applied on the $24,000 deferred payment. In other words, that amount on a settlement would be coming to each of the parties. But, as the business of the firm resulted in a deficit, the adjustment must be apportioned in the payment of the indebtedness of the firm. So apportioning it, the amount of the indebtedness to the mining company of each of the appellants Lesamis, Tyapay, and Garbin, as found by the trial court, would be reduced by $1,553.88, and that of the appellee increased by $4,661.66, leaving such indebtedness as follows:

Lesamis .....................................................$ 2,875.33
Tyapay ..................................................... 3,149.33
Garbin ..................................................... 2,661.52
Greenberg ................................................. 10,628.76

Total ...............................................$19,314.94

"The finding of the trial court should be modified to conform to this deduction."

Upon the going down of the mandate, the court below, as appears from the record, amended, as was its duty, its previous findings and decree to accord with the mandate of this court. The present appeal from that amended decree must therefore be, and hereby is, affirmed, and the attempted appeals by the defendants to the suit from orders made by the court below, denying their applications for other and conflicting amendments thereto, are dismissed.